BEYERLEIN, Appellant, *v.* WHITCOMB et al., Respond-
ents.

(No. 7,101.)

(Submitted October 6, 1933. Decided November 2, 1933.)

[26 Pac. (2d) 349.]

*Mr. F. W. Mettler* and *Mr. J. R. Wine,* for Appellant, submitted a brief; *Mr. Wine* argued the cause orally.

*Mr. J. Miller Smith, Mr. Paul W. Smith* and *Mr. David R. Smith,* for Respondents, submitted a brief; *Mr. Paul W. Smith* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff, Jane E. Beyerlein, has appealed from a judgment of nonsuit, entered in favor of the defendants, John E. Whitcomb and Amelia Mosher, in her action for damages for conversion of certain personal property.

On December 29, 1927, there was issued out of the district court of Lewis and Clark county an execution which recites the entry of judgment, in favor of Whitcomb and against this plaintiff, for the possession of certain lands. The mandate to the sheriff is that he "deliver the possession of said real property" to Whitcomb. The sheriff's return to the writ is that, on February 11, 1928, he delivered possession to Whitcomb and "delivered to Jane E. Beyerlein a copy of said execution together with a copy of the judgment referred to in the execution."

The plaintiff's version of what took place on February 11 is that a local deputy sheriff came into the house, at her invita-

tion, and laid a paper on the table; that he said he did not know what it was, but that the sheriff, who had given it to him, was outside. At plaintiff's request the deputy called the sheriff in, who, while she "glanced over the paper," explained that it was "an order of the court putting Mr. Whitcomb in possession of the ranch." The plaintiff obtained permission to ride with the sheriff to Helena and requested the deputy sheriff to look after her personal property, consisting of the usual household goods, personal effects, farm machinery, livestock and poultry, to which request he assented. Before leaving for Helena, the sheriff made a trip to the Mosher ranch, where Whitcomb resided. The plaintiff testified that she did not see Whitcomb, but that he might have been on the ranch.

In Helena, the plaintiff filed notice of appeal and a supersedeas bond in Whitcomb's action against her, and, on March 5, applied to the court for the recall of the execution. The court later sustained exceptions to the sureties on the bond; no further bond was furnished and the appeal was dismissed. The court then denied the application for recall. On appeal, the action of the trial court was sustained. (*Whitcomb* v. *Beyerlein*, 84 Mont. 470, 276 Pac. 430.)

The plaintiff returned to the ranch on February 17, where she found Whitcomb in possession and her personal property, exclusive of livestock and poultry, loaded on her two wagons and a sled, covered with canvass. Whitcomb denied her admission to the house, and she slept in one of the wagons. The next morning employees of Mrs. Mosher moved the loaded vehicles from the land to the highway, from which point plaintiff made no attempt to remove them. She made no demand upon Whitcomb for her livestock and poultry. The livestock and farm machinery were later taken and disposed of on foreclosure of mortgages; much of the property left on the highway was stolen, a small amount retrieved by the plaintiff, and the balance was in November, 1930, with the consent of the plaintiff, dumped in the Dearborn River.

Originally the sheriff was made co-defendant, but on the trial the plaintiff dismissed as to him.

The contention is that the plaintiff was never lawfully ██ dispossessed and consequently, that Whitcomb's possession was wrongful and his exercise of dominion over the personal property constituted a conversion thereof. In support of this contention counsel for plaintiff cite numerous decisions to the effect that an officer cannot break in for the purpose of levying on personal property, and that a levy secured by fraud, trickery or trespass is invalid. These authorities are not applicable here; the sheriff was not seeking to levy on personal property; he did not force an entrance, but was invited into the house by the plaintiff; if she had the right to close the outer door to prevent service, she waived that right. (*Stearns* v. *Vincent,* 50 Mich. 209, 15 N. W. 86, 45 Am. Rep. 37.) There was no trespass; nor was there fraud or trickery in obtaining service; the sheriff frankly disclosed his mission. Plaintiff's attack on the service for irregularity should have been made directly in the original action. (16 Ency. Pl. & Pr. 752; *South Beach Land Assn.* v. *Christy,* 41 Cal. 501; *Smith* v. *Pretty,* 22 Wis. 655.)

However, the execution was issued pursuant to subdivision 4 of section 9417, Revised Codes of 1921, which is but an adoption of the common-law writ of seisin (2 Cooley's Blackstone, 255), or writ of possession. (16 Ency. Pl. & Pr. 745, and note declaring that the modern writ differs little from the ancient one, citing section 682, California Code of Civil Procedure, identical with our section above.)

The mandate of the writ, ancient or modern, is that the party entitled be put in possession of the lands described; if the defeated party remains in possession, her dispossession is but an intermediate step in the service of the execution or writ. It is the duty of such defeated party to vacate the premises, and, if she does not, she invites official action. An officer armed with the writ may force an entrance and may call upon a posse, if necessary, in his aid, and he and his posse may employ such reasonable force as is necessary for the removal of the delinquent and her personal property from the land and place the property on the public highway, with as little damage as pos-

sible, in the circumstances. A wilful abuse of authority will render the entry a trespass *ab initio,* but trifling departures will not have this effect. (*Page* v. *DePuy,* 40 Ill. 506; *Miller* v. *White,* 80 Ill. 580.)

However, "a defendant may surely yield obedience to the process of the court, without being forcibly turned out, neck and heels" (*Smith* v. *White,* 5 Dana (Ky.), 376), and it is not necessary that all of a defeated party's property be removed before the land and tenements are turned over to her adversary. ▮ Where she does not dispute the service but permits her adversary to be placed in possession, she, or her agents, may remain upon the land for shelter or for the purpose of caring for her personal property until it can be removed, without affecting the validity of the service (*Scott* v. *Richardson,* 2 B. Mon. (Ky.) 507, 38 Am. Dec. 170).

The plaintiff did not show that Whitcomb was not lawfully ▮ placed in possession of the ranch, and, as we must presume that official duty has been regularly performed (sec. 10606, subd. 15, Rev. Codes 1921), it must be presumed that the property placed on the highway was removed at the direction of the sheriff, the employees of Mrs. Mosher acting as his posse.

It is not shown that there was any wrongful taking of ▮ personal property by these defendants; while no demand is necessary when a wrongful taking is shown (*Territory* v. *Cox,* 3 Mont. 197), in the absence of such a showing, a demand and refusal are conditions precedent to the maintenance of an action for conversion (*Duckett* v. *Biggs,* 57 Mont. 443, 188 Pac. 938).

The trial court did not err in granting the defendants' motion for a nonsuit. Judgment affirmed.

Mr. Chief Justice Callaway and Associate Justices Angstman, Stewart and Anderson concur.